LOCAL 248 UAW, Respondent, v. NATZKE, Appellant.

*November 27, 1964, October 4, 1967—October 31, 1967.*

For the appellant there were briefs by *Mount & Keck* of Milwaukee, and oral argument by *Herbert L. Mount.*

For the respondent there was a brief by *Zubrensky & Padden,* attorneys, and *Herbert S. Bratt* of counsel, all of Milwaukee, and oral argument by *Mr. Bratt.*

For the appellant there was a supplemental brief and oral argument by *John A. Keck* and *James Urdan,* both of Milwaukee.

For the respondent there was a supplemental brief by *Zubrensky, Padden, Graf & Bratt* of Milwaukee, and oral argument by *Herbert S. Bratt.*

CURRIE, C. J.    As a result of the decision of the United States Supreme Court in *NLRB v. Allis-Chalmers Mfg. Co.,*[6] the appellant employee is now relying upon these three contentions:

(1)    That state courts are without jurisdiction to entertain an action, such as the instant one, for collection of a fine imposed upon a union employee who returns to work during a strike, because it would constitute coercion of the employee in his exercise of a right protected by sec. 7 of the National Labor Relations Act.[7]

(2)    The enforcement of such a fine by state court action is contrary to state labor policy.

(3)    Such enforcement is not authorized by the union membership contract.

At the last oral argument counsel for appellant expressly abandoned any issue with respect to the factual determination that appellant was a full union member at the time he returned to work during the strike.

*Interference with Sec. 7 Rights.*

*NLRB v. Allis-Chalmers Mfg. Co.* held that the instant plaintiff union, which threatened and imposed reasonable fines, and brought suit for their collection, upon members who had crossed the union's picket line to work during an authorized strike against their employer, did not com-

---

[6] *Id.*

[7] 29 USC, sec. 157.

mit the unfair labor practice under sec. 8 (b) (1) (A) of the National Labor Relations Act [8] of engaging in conduct "to restrain or coerce" employees in the exercise of their right guaranteed by sec. 7 to "refrain from" concerted activities.[9] Nonetheless, appellant argues that a state court's enforcement of those fines would coerce the employees in the exercise of their sec. 7 rights. We disagree.

Appellant relies heavily on *Bus Employees v. Wisconsin Board* [10] which held void Wisconsin's public utility antistrike law [11] that forbade strikes against public utilities and provided for compulsory arbitration of labor disputes in the public utility industry. The basis of the decision was that the act infringed upon the sec. 7 right of employees to engage in concerted activities. Appellant points out that the court reached this conclusion although there was no express provision in sec. 8 of the National Labor Relations Act making the state's activities under its public utility antistrike law an unfair labor practice. Upon this premise he argues that it is immaterial that an action in state court to collect the instant fine has been ruled not to be an unfair labor practice on the part of plaintiff union in *NLRB v. Allis-Chalmers Mfg. Co.* In other words, appellant's position is that while that deci-

---

[8] 29 USC, sec. 158 (b) (1) (A).

[9] The relevant provisions of secs. 7 and 8 (b) (1) (A) are: "Sec. 157. . . . Employees shall have the right to . . . engage in . . . concerted activities . . ., and shall also have the right to refrain from any or all such activities . . . ."

"Sec. 8 (b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein. . . ."

[10] (1951), 340 U. S. 383, 71 Sup. Ct. 359, 95 L. Ed. 364, which reversed 257 Wis. 43, 42 N. W. 2d 471, and 258 Wis. 1, 44 N. W. 2d 547, two 1950 decisions of this court.

[11] Secs. 111.50 *et seq.,* Wis. Stats. 1949.

sion makes it clear that it is not unlawful under the National Labor Relations Act for plaintiff to seek to collect the fine, the state would be coercively interfering with appellant's sec. 7 protected rights if it, through its courts, enforced such collection.

We deem this to be a wholly illogical argument. If it is not an unlawful interference with appellant's sec. 7 protected rights for the union to seek collection of the fine as part of its permitted internal discipline procedures, we cannot perceive how it is unlawful for a state court to make that attempted collection effectual. The *Bus Employees Case* dealt with a situation where the state itself was directly interfering with sec. 7 protected rights. It had nothing to do with assisting a union by effectuating an internal disciplinary procedure which had been ruled lawful by the United States Supreme Court.

If the courts of this state are barred from enforcing collection of the instant fine, it is not because such enforcement constitutes a violation by the state of appellant's sec. 7 protected rights, but because of federal preemption over the collection process. This latter point will be dealt with in connection with our consideration of the next issue to be considered.

## Alleged Violation of State Labor Policy.

Defendant asserts that enforcement of the fines would violate state labor policy as determined by the Wisconsin Employment Relations Board in *Allis-Chalmers Mfg. Co. v. Local 248, United Automobile, Aircraft & Agricultural Implement Workers,*[12] *Joseph Carey v. Lodge 78, Inter-*

[12] (1959), Dec. No. 5314–A, affirmed by the circuit court for Milwaukee county (1960), Case Nos. 284–288, 285–229; 46 LRRM 2628, which judgment was reversed by this court in *Local 248, United Automobile, Aircraft & Agricultural Implement Workers v. Wis. Employment Relations Board* (1960), 11 Wis. 2d 277, 105 N. W. 2d 271, certiorari denied, 365 U. S. 878, 81 Sup. Ct. 1028, 6 L. Ed. 2d 190.

*national Association of Machinists* [13] and *Globe Union, Inc., v. Tool & Die Makers Lodge 78, International Association of Machinists.* [14]

In the last footnote to Mr. Justice BRENNAN'S opinion in *NLRB v. Allis-Chalmers Mfg. Co.*, it is stated:

"Not before us is the question of the extent to which union action for enforcement of disciplinary penalties is pre-empted by federal labor law. . . ." [15]

Merely because the United States Supreme Court may have left this issue undecided does not mean that Wisconsin is free to interpose a labor policy with respect to employees engaged in interstate commerce which is in direct conflict to that enunciated by NRLB. Until such time as the United States Supreme Court has spoken with finality on the issue, Wisconsin, under the rule of pre-emption laid down in *San Diego Unions v. Garmon,* [16] must defer to decisions of the NLRB which have held that state court enforcement of such fines is protected by the proviso to sec. 8 (b) (1) (A) of the National Labor Relations Act. [17]

In *Garmon* the court stated:

"At times it has not been clear whether the particular activity regulated by the States was governed by sec. 7 or sec. 8 or was, perhaps, outside both these sections.

---

[13] (1959), Dec. Nos. 5008, 5008–B, 44 LRRM 1060; affirmed by the circuit court for Milwaukee county (1960), Case Nos. 281–203, 281–417, 46 LRRM 2615.

[14] (1960), Dec. No. 5539–A, 46 LRRM 1376, reversed on remand from the circuit court for Milwaukee county (1961), Case Nos. 281–203, 281–417, in (1962), Dec. No. 5539–B.

[15] *Supra*, footnote 5, at page 197, footnote 37.

[16] (1959), 359 U. S. 236, 79 Sup. Ct. 773, 3 L. Ed. 2d 775.

[17] See Cox, Federalism in the Law of Labor Relations, 67 Harv. L. Rev. (1954), 1297, 1339 *et seq.;* Michelman, State Power to Govern Concerted Employee Activities, 74 Harv. L. Rev. (1961), 641; McCoid, Notes on a "G-String": A Study of the "No Man's Land" of Labor Law, 44 Minn. L. Rev. (1959), 205; and Currier, Defamation in Labor Disputes: Preemption and the New Federal Common Law, 53 Va. L. Rev. (1967), 1.

But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board. . . .

". . . When an activity is arguably subject to sec. 7 or sec. 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

". . . If the Board decides, subject to appropriate federal judicial review, that conduct is protected by sec. 7, or prohibited by sec. 8, then the matter is at an end, and the States are ousted of all jurisdiction. . . ." [18]

We interpret the words "ousted of all jurisdiction" appearing in the last quoted sentence, in the light of the NLRB's decisions in these union fine cases, as not meaning that state courts are without jurisdiction to enforce collection of the fine, but rather that state courts are without jurisdiction to enforce any state policy which is at variance with the one enunciated by NLRB. [19] As will be seen, NLRB decisions make it clear that court enforcement of the instant fines is consonant with federal labor policy as determined by that board.

In *Local 248, United Automobile, Aircraft & Agricultural Implement Workers v. Wis. Employment Relations Board* [20] this court inferred from several cited decisions that the NLRB had interpreted the proviso of sec. 8 (b) (1) (A) as having the effect of making the enforcement

[18] Footnote 16, *supra,* at pages 244, 245. *Garmon* is the controlling case in questions of preemption. See *Vaca v. Sipes* (1967), 386 U. S. 171, 87 Sup. Ct. 903, 17 L. Ed. 2d 842; *Plumbers' Union v. Borden* (1963), 373 U. S. 690, 697, 83 Sup. Ct. 1423, 10 L. Ed. 2d 638; *Retail Clerks v. Schermerhorn* (1963), 375 U. S. 96, 105, 84 Sup. Ct. 219, 11 L. Ed. 2d 179; *Wax v. International Mailers Union* (1960), 400 Pa. 173, 161 Atl. 2d 603.

[19] Cf. *Hanna Mining Co. v. Marine Engineers* (1965), 382 U. S. 181, 86 Sup. Ct. 327, 15 L. Ed. 2d 254.

[20] *Supra,* footnote 12.

by a union of a fine authorized by its own constitution and bylaws a protected activity under the National Labor Relations Act. No longer is it necessary to resort to inference. In *Local 248, United Automobile, Aircraft & Agricultural Implement Workers* [21] the NLRB held the very union activity involved in the instant case "was protected by the proviso to Section 8 (b) (1) (A) of the Act." [22]

The NLRB adhered to its decision in *Local 248, UAW,* even though it had been reversed by the Seventh Circuit Court of Appeals. [23]

This court considers itself bound by the board's interpretations of the effect of the proviso of sec. 8 (b) (1) (A) of the National Labor Relations Act, inasmuch as the United States Supreme Court has not held them to be erroneous.

### *Union Membership Contract.*

In *Machinists v. Gonzales* [24] the United States Supreme Court stated, "This contractual conception of the regulation between a member and his union widely prevails in this country . . . ." [25] This court has consistently held that a union's constitution and bylaws

---

[21] *Supra,* footnote 1.

[22] *Supra,* footnote 1, at page 69.

[23] *Associated Musicians of Greater New York, Local 802, AFM* (1967), 164 NLRB No. 8, p. 8, fn. 25 and accompanying text. *See also Leeds and Northrup Company* (1965), 155 NLRB 1292, 1296; *Coca-Cola Bottling Corp.* (1965), 153 NLRB 1425, 1437, fn. 56 and accompanying text; *Tawas Tube Products, Inc.* (1965), 151 NLRB 46, 47; and 30th Annual Report of the National Labor Relations Board (1965), 31, 84, 85. The reversal by the Seventh Circuit Court of Appeals has now been nullified by the decision of the United States Supreme Court in *NLRB v. Allis-Chalmers Mfg. Co., supra,* footnote 5.

[24] (1958), 356 U. S. 617, 78 Sup. Ct. 923, 2 L. Ed. 2d 1018.

[25] *Id.* at page 618.

constitute a contract between the union and its members, which contract may be enforced in state courts.[26]

Appellant does not take issue with this but contends that because the instant union membership contract only specified the remedies of expulsion or suspension for the nonpayment of fines, that such remedies are to be exclusive.[27] Therefore, it is argued that court action to enforce the fine will not lie.

We consider particularly apposite the statement made by Mr. Justice BRENNAN by way of footnote in his opinion for the court in *NLRB v. Allis-Chalmers Mfg. Co.*:

"It is suggested that while such provisions for fines and expulsion were a common element of union constitutions at the time of the enactment of sec. 8 (b) (1), such background loses its cogency here because such provisions did not explicitly call for court enforcement. However the potentiality of resort to courts for enforcement is implicit in any binding obligation. Surely it cannot be said that the absence of a 'court enforceability' clause in a contract of sale implies that the parties do not foresee resort to the courts as a possible means of enforcement. It is also suggested that court enforcement of fines is 'a rather recent innovation.' Yet such enforcement was

---

[26] *Lodge 78, International Asso. of Machinists v. Nickel* (1963), 20 Wis. 2d 42, 121 N. W. 2d 297; *Fray v. Amalgamated, etc., Local Union No. 248* (1960), 9 Wis. 2d 631, 101 N. W. 2d 782; *United Automobile, Aircraft & Agricultural Implement Workers v. Woychik* (1958), 5 Wis. 2d 528, 93 N. W. 2d 336; *Local 261, International Union v. Schulze* (1958), 3 Wis. 2d 479, 89 N. W. 2d 191.

[27] The pertinent provision of the UAW international constitution provides: ". . . In case the accused is found guilty, the Trial Committee may, by a majority vote, reprimand the accused; or it may, by a two-thirds (⅔) vote, assess a fine not to exceed one hundred dollars ($100) with automatic suspension, removal from office or expulsion in the event of the failure of the accused to pay the fine within a specified time; or it may, by a two-thirds (⅔) vote, suspend or remove the accused from office or suspend or expel him from membership in the International Union."

known as early as 1867. *Master Stevedores' Assn. v. Walsh,* 2 Daly 1 (N. Y.)." [28]

It is not clear that the above-quoted statement had the approval of Mr. Justice WHITE, so as to represent the view of a five-member majority of the United States Supreme Court.[29] Nevertheless, its logic appeals to us as being sound. The reference to a contract of sale makes it clear that Mr. Justice BRENNAN, and the other three justices who concurred with him, deem that general principles of contract law govern, and we agree.

In *Jackson v. Cleveland* [30] this court had before it a railroad construction contract which provided that, if the contractor failed to complete the work within a prescribed time, the company could rescind the contract or could employ additional help at the contractor's expense. The court held that this provision did not deprive the company of the right to sue for damages for the contractor's breach in failing to complete the work. The court stated:

". . . Such provisions are common in this class of contracts, and are obviously inserted to secure the prompt completion of the work in a case where perhaps such completion might be of the greatest possible importance. They have not been construed as having the effect of depriving the party in whose favor they are made, of the liberty of resorting to the usual legal remedies for a breach of the contract; and we see no good reason for saying such an effect should be given them. . . ." [31]

[28] *Supra,* footnote 5, page 182, footnote 9.

[29] The court's opinion had the concurrence of only four justices including Mr. Justice BRENNAN, who authored it. Mr. Justice WHITE concurred specially in the holding that the imposing of the fines and the bringing of suit to collect them did not constitute an unfair labor practice under sec. 8 (b) (1) (A) of the National Labor Relations Act, but stated, "I am doubtful about the implications of some of its [the court's opinion] generalized statements." 388 U. S. at page 199.

[30] (1865), 19 Wis. 422 (*400).

[31] *Id.* at page 431 (*409).

The holding in *Jackson v. Cleveland* is in accord with the general rule of contract law stated in American Jurisprudence as follows:

"Although the parties may, in their contract, specify a remedy for a breach thereof, that specification does not exclude other legally recognized remedies. A contract will not be construed as taking away a common-law remedy unless that result is imperatively required." [32]

In *United Automobile, Aircraft & Agricultural Implement Workers v. Woychik* [33] this court upheld the court enforcement of a union fine against a member who had failed to picket during a strike. There was no argument or discussion of the issue now being discussed, however, this court was aware that the pertinent section of the International's constitution provided:

"Local Unions may levy fines for nonattendance at membership meetings, and for other reasons, provided that such fines do not exceed $1.00 and further provided that the provisions for such fines (1) are properly adopted by the local union, (2) are approved by the International Executive Board, and (3) are administered on a reasonable and nonexcessive basis. In cases where the facts involving the application of such fines are not in dispute, the local union is empowered to provide for the forfeiture of the membership of the delinquent member for nonpayment thereof without the necessity of proceeding by the filing of charges and the conduct of a trial." (Vol. 2698, Appendices and Briefs, p. 5 of App. Brief.)

There was no express provision in the constitution or bylaws for court enforcement of the fine.

We hold that when appellant was fined $100 by plaintiff union, a binding obligation in the form of a debt was created which was subject to collection by court action. In arriving at this conclusion we are not unmindful

[32] 17 Am. Jur. 2d, *Contracts*, sec. 445, p. 906. See also 5A Corbin, *Contracts*, sec. 1227, pp. 501, 502, footnotes 90 and 90.5; and Annot. (1962), 84 A. L. R. 2d 322.

[33] *Supra*, footnote 26.

that it is contra to the holding of the Washington court in *United Glass Workers' Local No. 188 v. Seitz.*[34] However, we deem the latter decision expresses a minority viewpoint in holding that, where a contract authorizes one type of remedy for breach, such remedy is exclusive of all other remedies ordinarily available.

*By the Court.*—Judgment affirmed.

HANLEY, J., took no part.

[34] (1965), 65 Wash. 2d 640, 399 Pac. 2d 74. See also *Retail Clerks Local 629 v. Christiansen* (1965), 67 Wash. 2d 29, 406 Pac. 2d 327.